UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE CAMILO | Civil Action No. 20-14937 (MCA) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| HONORABLE BRUNO L. LEOPIZZI, et al., | & ORDER |
| Defendants. | |

*Pro se* Plaintiff Jose Camilo, ("Plaintiff"), a convicted state prisoner presently incarcerated at East Jersey State Prison, has filed a *pro se* Complaint alleging violations of his civil rights under 42 U.S.C. § 1983. *See* ECF No. 1. At this time, the Court will grant Plaintiff's application to proceed *in forma pauperis*. ECF No. 1-1.

Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B). For the reasons explained herein, the Complaint is dismissed in its entirety pursuant to the Court's screening authority.

I. FACTUAL BACKGROUND

The instant Complaint raises civil rights claims pursuant to 42 U.S.C. § 1983 and a civil conspiracy pursuant to 42 U.S.C. §§ 1985, 1986, arising from an allegedly illegal sentence imposed in connection with Plaintiff's 1982 murder conviction ("the illegal sentence claim"). Plaintiff has also sued the New Jersey State Parole Board for denying parole on several

occasions (the "parole denial claim"), and the New Jersey State Court Appellate Panel that affirmed the denial of parole.

Specifically, Plaintiff has sued the Honorable Bruno L. Leopizzi for allegedly abusing his authority in relying on illegal statements from witnesses and sentencing Plaintiff to an allegedly illegal extended life sentence on September 15, 1982. *See* Complaint at 5-6, 10. Plaintiff has also sued the Honorable Miguel A. De La Carrera, J.S.C. for refusing to vacate the illegal sentence. In addition, Plaintiff has sued the Honorable Randolph M. Subryan, J.S.C. and the Honorable Adolph A. Romei for vacating a portion of the illegal sentence but leaving the remaining illegal sentence intact. *See id.* at 6, 11, 15. Plaintiff appears to assert that his sentence is the result of systemic racism. *See id.* at 12.

Plaintiff faults the New Jersey State Parole Board for relying on "illegal statements," in denying parole, and also alleges retaliation and racial bias by the Parole Board:

> These [illegal] statements were used in whole and in part to issue the petitioner an additional twenty (20) year, two-hundred and forty (240) month death sentence. A new sentence and when the petitioner successfully had the Future Eligibility Term or the New sentence vacated, the parole board in a retaliatory and racially biased attempt to seek retribution against the petitioner, issued a sixteen (16) year and eight month (200 month) Future Eligibility Term, which at the petitioners current age of sixty-four (64) and the current Covid 19 (Corona Virus) pandemic is in fact a death sentence.

*See id.* at 12.

Plaintiff also sues the New Jersey Appellate Division Panel[1] that affirmed the denial of parole. *See id.* at 12. He alleges that the panel upheld the allegedly illegal sentence and the alleged racial bias and retaliatory conduct of the Parole Board. *See id*; *see also* Complaint at 15.

---

[1] The New Jersey Appellate Panel and Judge Leopizzi, Judge De La Carrera, Judge Subryan, and Judge Romei are collectively referred to as the "Judicial Defendants."

Plaintiff also appears to sue the prosecutor in his criminal case, Ronald G. Marmo, because he "never made a written application for a discretionary motion for an extended term of imprisonment under N.J.C.R. R. 3:21-4(e), which the judge used in his statement of [reasons] to issue the extended term of confinement. . . . . [and] knew or should have known that the Court Rule did not apply to petitioner[.]" *See id.* at 13.

Plaintiff also appears to sue his criminal defense attorney Anthony Fusco Jr. for allegedly assisting the State and the Court in violating the petitioner's constitutional rights, as Fusco knew that the court's imposition of an extended sentence was illegal because the state had not applied for an extended term. *See id.* at 14.

Plaintiff seeks punitive and compensatory damages. *See* Complaint at 8. He does not specifically seek equitable relief, such a new parole hearing.

## II.     STANDARD OF REVIEW

The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as the standard for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the Court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### III. ANALYSIS

#### a. Habeas vs. Civil Rights Actions

Because Plaintiff appears to challenge the results of his criminal proceedings, the Court begins by explaining when a challenge to a criminal proceeding must be brought in a habeas action and when it may be brought as either a habeas or civil rights action. The United States Supreme Court has held that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *see also Wolff v. McDonnell*, 418 U.S. 539, 554 (1974); *Heck v. Humphrey*, 512 U.S. 477, 481 (1994); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). Instead, he or she must seek federal habeas corpus relief (or appropriate state relief). *See Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). These Supreme Court decisions stand for the proposition that prisoners may "use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson*, 544 U.S. at 81. As explained by the Court in *Wilkinson*,

> a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Id.* at 81–82. Thus, a prisoner's challenge to a conviction, sentence, or parole proceeding that necessarily demonstrates the invalidity of the prisoner's confinement are barred under well-established Supreme Court precedent.

Nevertheless, under *Wilkinson*, parole challenges may be brought in a civil rights action where the plaintiff seeks "to render invalid the state procedures used to deny parole eligibility . . . or parole suitability" and does not seek an injunction ordering his immediate or speedier release into the community. *Id.* at 82. (Citations omitted). Such a suit under § 1983 would not necessarily invalidate the fact or duration of confinement, and at best, would afford a new eligibility review and speed consideration of a new parole application. *See id.*

Although Plaintiff purports to seek only damages, success on his illegal sentence claim would necessarily invalidate the validity of that sentence, and the claim is thus barred under *Heck v. Humphrey*, 512 U.S. at 487. As to that claim, Plaintiff's sole remedy is to file a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Preiser*, 411 U.S. at 487–88. His illegal sentence claim is thus subject to dismissal without prejudice under the Court's screening authority and may not be reasserted unless Plaintiff can show that a state or federal court has set aside the allegedly illegal sentence.

With respect to the parole denial claim, it is not clear if Plaintiff challenges the procedure used to deny parole, the outcome of the proceeding, or both. Because he does not explicitly seek release on parole, the Court does not find that it barred by *Heck* at this early juncture.

  b. **Plaintiff's Federal Claims Pursuant to 42 U.S.C. §§ 1983, 1985, 1986**

The Court next considers Plaintiff's federal claims against the individual Defendants. Plaintiff characterizes his claims as violations of due process and cruel and unusual punishment, which the Court construes as civil rights claims pursuant to 42 U.S.C. § 1983. Plaintiff also appears to assert a civil conspiracy pursuant to 42 U.S.C. §§ 1985, 1986.

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the

Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). "It is well settled that § 1983 does not confer any substantive rights, but merely 'provides a method for vindicating federal rights elsewhere conferred.'" *Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir. 2014)). To establish a claim under § 1983, Plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

Plaintiff's claims against the New Jersey State Parole Board brought pursuant to 42 U.S.C. § 1983 fail because that entity is not a person within the meaning of § 1983. *See Madden v. New Jersey State Parole Bd.*, 438 F.2d 1189, 1190 (3d Cir. 1971) (New Jersey State Parole Board is not person under § 1983); *Thrower v. The New Jersey State Parole Bd.*, 438 F. App'x. 71, 72 (3d Cir. 2011) (affirming dismissal of New Jersey State Parole Board). The § 1983 claims against the New Jersey State Parole Board are dismissed <u>with prejudice</u> for failure to state a claim for relief pursuant to § 1915(e)(2)(B).

Plaintiff has sued multiple state court judges in connection with his illegal sentence and parole denial claims. It is well established that judges are immune from suit under § 1983 for monetary damages arising from their judicial acts. *See Mireles v. Waco*, 502 U.S. 9, 9, (1991); *Forrester v. White*, 484 U.S. 219, 225–27 (1988); *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978). Courts must engage in a two-part inquiry to determine whether judicial immunity is applicable. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12.

With respect to the first inquiry, "the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362.  Courts must "draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges," such as administrative acts.  *Forrester*, 484 U.S. at 227.

As to the second inquiry, absence of jurisdiction is construed very narrowly.  Thus, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"  *Stump*, 435 U.S. at 356–57 (citation omitted); *see also Forrester*, 484 U.S. at 227 (an act "does not become less judicial by virtue of an allegation of malice or corruption of motive"); *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) ("Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed.") (citation omitted).  Immunity will not be forfeited because a judge has committed "grave procedural errors," *Stump*, 435 U.S. at 359, or because a judge has conducted a proceeding in an "informal and ex parte" manner.  *Forrester*, 484 U.S. at 227.  Further, immunity will not be lost merely because the judge's action is "unfair" or controversial.  *See Cleavinger*, 474 U.S. at 199–200 (immunity applies "however injurious in its consequences [the judge's action] may have proved to the plaintiff ") (citation omitted); *Stump*, 435 U.S. at 363–64 ("Disagreement with the action taken by the judge ... does not justify depriving that judge of his immunity.... The fact that the issue before the judge is a controversial one is all the more reason that he should be able to act without fear of suit.").

In sum, the analysis of judicial immunity must focus on the general nature of the challenged action, without inquiry into such "specifics" as the judge's motive or the correctness of his or her decision. *See Mireles*, 502 U.S. at 13 ("[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.' In other words, we look to the particular act's relation to a general function normally performed by a judge ....") (citation omitted).

Here, Plaintiff alleges that Judge Leopizzi, Judge De La Carrera, Judge Subryan, and Judge Romei either sentenced him illegally and/or failed to vacate the illegal sentence. Even if the Court assumes the truth of these allegations, these particular Judicial Defendants are entitled to judicial immunity for sentencing plaintiff because sentencing is plainly a judicial act and within their respective jurisdiction as state-court trial judges. Likewise, the Appellate Division Panel is entitled to judicial immunity for affirming the New Jersey State Parole Board's denial of parole, which is also plainly a judicial act within the Panel's appellate jurisdiction. The fact that these Judges allegedly had improper motives, such as racial bias, does not defeat judicial immunity. For these reasons, the § 1983 claims against the Judicial Defendants are dismissed <u>with prejudice</u> on the basis of judicial immunity pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B).

Plaintiff also alleges misconduct by the prosecutor in his criminal case. Like judges, "[p]rosecutors are ordinarily shielded by absolute immunity for their prosecutorial acts." *United States v. Washington*, 869 F.3d 193, 219 (3d Cir. 2017); *see Buckley v. Fitzsimmons*, 509 U.S. 259, 270 (1993) (finding that prosecutors are immune from liability for appearing before a judge and presenting evidence during a judicial proceeding). Here, the prosecutor allegedly argued for an extended sentence in Plaintiff's criminal case, which is indisputably a prosecutorial act. The

Court will therefore dismiss the Complaint against the prosecutor on the basis of judicial immunity.

Plaintiff's civil rights claims against his criminal defense attorney are not actionable under § 1983.  "[P]ublic defenders are generally not considered state actors for § 1983 purposes when acting in their capacities as attorneys."  *Rieco v. Hebe*, 633 F. App'x 567, 569 (3d Cir. 2015) (quoting *Polk County v. Dodson*, 454 U.S. 312, 324-25 (1981) (alteration in original) (no state action for the purposes of § 1983 where public defender represented defendant in criminal matter); *see also Introcaso v. Meehan*, 338 F. App'x. 139, 142 (3d Cir. 2009).  Moreover, ineffective assistance of appointed counsel in representing a defendant is not actionable under § 1983 to the extent it undermines the defendant's conviction or sentence and must be brought in a habeas petition after exhausting state court remedies.  *See Rushing v. Pennsylvania*, 637 F. App'x. 55, 58 (3d Cir. 2016) ("to the extent that [the plaintiff] was attempting to assert ineffectiveness of counsel claims against his attorneys, those should have been brought in a habeas petition" after exhausting the claims in state court).  For these reasons, the Complaint fails to state a claim upon which relief may be granted against Plaintiff's public defender, and the claims against him are dismissed on that basis.

The Court also addresses 42 U.S.C. §§ 1985 and 1986 because Plaintiff's Complaint asserts racial bias and mentions these civil rights conspiracy statutes in passing.  From the outset, civil rights conspiracies, whether brought under § 1983 or § 1985, require a "meeting of the minds," and to survive screening, a plaintiff must provide some factual basis to support the existence of the elements of a conspiracy, namely, agreement and concerted action.  *See Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).  Such conspiracies are not limited to persons who act under state law,

but also reach private conduct that fits the terms of the statute. *See Griffin v. Breckenridge*, 403 U.S. 88, 96-101 (1971).

Because Plaintiff alleges that his sentence and denial of parole are the result of systemic racial bias, his allegations appear to implicate § 1985(3). "Section 1985(3) permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (citing 42 U.S.C. § 1985(3)). The elements of a section 1985 claim are well-established and to survive a motion to dismiss a Plaintiff must allege the following: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 91 (1971)). Notably, the Third Circuit has further explained that a Section 1985(3) plaintiff must establish: "(a) that a racial or other class-based invidious discriminatory animus lay behind the coconspirators' actions, (b) that the coconspirators <u>intended to deprive the victim of a right guaranteed by the Constitution against private impairment</u>, and (c) <u>that the right was consciously targeted and not just incidentally affected</u>." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 805 (3d Cir. 2001) (quoting *Spencer v. Casavilla*, 44 F.3d 74, 77 (2d Cir. 1994)(emphasis supplied)).

Section 1986 is a companion to Section 1985(3) and provides a cause of action against persons who, knowing that a violation of § 1985(3) is about to be committed and possessing the power to prevent its occurrence, fail to take action to frustrate its execution. *Rogin v. Bensalem*

*Tp.*, 616 F.2d 680, 696 (3d Cir. 1980), *cert. denied*, 450 U.S. 1029 (1981). "[T]ransgressions of § 1986 by definition depend on a preexisting violation of § 1985." *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994). In addition to establishing the existence of a Section 1985 conspiracy, a plaintiff asserting a claim under § 1986 must demonstrate that: "(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." *Id.*

Plaintiff's conspiracy allegations arising under §§ 1985 and 1986 are premised on bald allegations in his Complaint. Although Plaintiff alleges in a conclusory fashion his sentence and denial of parole are the result of systemic racial bias and retaliation, he fails to provide any well-pleaded facts supporting the "the principal element of [a civil rights conspiracy], which is an agreement between the parties 'to inflict a wrong against or injury upon,' and 'an overt act that results in that damage.'" *Russo v. Voorhees Twp.*, 403 F. Supp. 2d 352, 359 (D.N.J. 2005) (citing *Lenard v. Argento*, 699 F.2d 874, 882 (7th Cir.1983)). [2] The Complaint also provides <u>no facts</u> from which the Court could find that "an invidious discriminatory animus lay behind the coconspirators' actions" and that the Defendants consciously and intentionally discriminated against him on the basis of his race. *See Brown*, 250 F.3d at 805. For these reasons, the Court dismisses without prejudice Plaintiff's race-based conspiracy claims brought pursuant to § 1985(3).

Because "transgressions of § 1986 by definition depend on a preexisting violation of § 1985", *Clark v. Claybaugh*, 20 F.3d 1290, 1295 (1994), and Plaintiff has not sufficiently pleaded

---

[2] The Court notes that to the extent Plaintiff also alleges a conspiracy under § 1983, he does not sufficiently allege agreement and concerted action with respect to any of the Defendants.

a violation of § 1985, the Court also dismisses without prejudice Plaintiff's conspiracy claims under § 1986. *See Brawer v. Horowitz*, 535 F.2d 830, 841 (3d Cir. 1976) ("Having failed to state a claim under s 1985(2), *a fortiori* appellants failed to state a claim under s 1986.").

The Court will permit Plaintiff to submit an Amended Complaint, *see Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (holding that in civil rights cases, the Court must allow amendment, unless doing so would be inequitable or futile), to the extent he can provide facts to cure the deficiencies in his claims. Because the illegal sentence claim is barred by *Heck*, the Court will <u>not</u> permit Plaintiff to submit an amended complaint with respect to his illegal sentence claim unless he is able to show that the sentence at issue has been set aside by a state or federal court. Plaintiff may not assert § 1983 claims against any of the Judicial Defendants or the New Jersey Parole Board, but he may name the <u>individual members of the parole board</u> to the extent he challenges parole procedures or suitability and seeks a new parole hearing (rather than damages).[3]

For the reasons explained in this Memorandum Opinion and Order, the Court grants Plaintiff's IFP application, and the Complaint is dismissed in its entirety pursuant to § 1915(e)(2)(B).

**IT IS, THEREFORE**, on this 16th day of February 2021,

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* is **GRANTED** (ECF No. 1-1); and it is further

**ORDERED** that the Complaint shall be filed; and it is further

---

[3] Plaintiff is also free to file a habeas corpus petition under 28 U.S.C. § 2254 in a separate action to the extent Plaintiff has exhausted his administrative remedies as to his most recent denial of parole.

**ORDERED** that, pursuant to 28 U.S.C. § 1915(b) and for purposes of account deduction only, the Clerk shall serve a copy of this Order by regular mail upon the Attorney General of the State of New Jersey and the Administrator of East Jersey State Prison; and it is further

**ORDERED** that Plaintiff is assessed a filing fee of $350.00 and shall pay the entire filing fee in the manner set forth in this Order pursuant to 28 U.S.C. § 1915(b)(1) and (2), regardless of the outcome of the litigation, meaning that if the Court dismisses the case as a result of its *sua sponte* screening, or Plaintiff's case is otherwise administratively terminated or closed, § 1915 does not suspend installment payments of the filing fee or permit refund to the prisoner of the filing fee, or any part of it, that has already been paid; and it is further

**ORDERED** that pursuant to *Bruce v. Samuels*, 136 S. Ct. 627, 632 (2016), if Plaintiff owes fees for more than one court case, whether to a district or appellate court, under the Prison Litigation Reform Act (PLRA) provision governing the mandatory recoupment of filing fees, Plaintiff's monthly income is subject to a simultaneous, cumulative 20% deduction for each case a court has mandated a deduction under the PLRA; *i.e.*, Plaintiff would be subject to a 40% deduction if there are two such cases, a 60% deduction if there are three such cases, etc., until all fees have been paid in full; and it is further

**ORDERED** that pursuant to 28 U.S.C. § 1915(b)(2), in each month that the amount in Plaintiff's account exceeds $10.00, the agency having custody of Plaintiff shall assess, deduct from Plaintiff's account, and forward to the Clerk of the Court payment equal to 20% of the preceding month's income credited to Plaintiff's account, in accordance with *Bruce*, until the $350.00 filing fee is paid. Each payment shall reference the civil docket numbers of the actions to which the payment should be credited; and it is further

**ORDERED** that the Complaint is dismissed in its entirety pursuant to 28 U.S.C. 1915(e)(2)(B); and it is further

**ORDERED** that the § 1983 claims are dismissed **WITH PREJUDICE** as to the New Jersey State Parole Board and it is further

**ORDERED** that the § 1983 claims are dismissed **WITH PREJUDICE** as to the Judicial Defendants on the basis of judicial immunity; and it is further

**ORDERED** that the illegal sentence claim brought pursuant to § 1983 is dismissed without prejudice on the basis of *Heck v. Humphrey*, 512 U.S. 477, 481 (1994), and Plaintiff may not reassert this claim unless he can show that the allegedly illegal sentence has been set aside by a state or federal court; and it is further

**ORDERED** that the remaining claims and Defendants are dismissed **WITHOUT PREJUDICE** for the reasons stated in this Memorandum Opinion and Order; and it is further

**ORDERED** that, consistent with this Memorandum Opinion and Order, Plaintiff may submit an Amended Complaint within 45 days of the date of this Order to the extent he can cure the deficiencies in his Complaint; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Memorandum Opinion and Order to Plaintiff by regular U.S. mail and **ADMINISTRATIVELY TERMINATE** this matter accordingly.

s/Madeline Cox Arleo
Hon. Madeline Cox Arleo
United States District Judge